## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

| | | |
|---|---|---|
| **SHIRLEY RHYNES-HAWKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06-2763-STA-egb** |
| | ) | |
| **JOHN E. POTTER, et al.,** | ) | |
| **United States Postal Service,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Before the Court is Defendant John E. Potter's Motion for Summary Judgment (D.E. # 66), filed on September 18, 2009, as to all of Plaintiff's claims.  Plaintiff Shirley Rhynes-Hawkins filed a response in opposition to Defendant's Motion (D.E. #70) on October 21, 2009.  Defendant has filed a reply brief.

Also before the Court is Plaintiff's Motion for Partial Summary Judgment (D.E. # 53) filed on August 14, 2009, solely as to her claim of Family Medical Leave Act ("FMLA") interference.  Defendant has filed a response in opposition and also addressed Plaintiff's FMLA interference claim in its own Motion for Summary Judgment.

For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion is **DENIED**.

### BACKGROUND

The following facts are not in dispute for purposes of this Motion unless otherwise noted. Prior to her removal, Plaintiff was a Mailing Standards Specialist, EAS-16, for the United States Postal Service ("the Agency"). Def.'s Statement of Undisputed Facts ¶ 1. She worked in an office supervised by Acting Manager of Customer Service Support Bobby Jackson ("Jackson"), and her second-line supervisor was Postmaster/Metro Manager Ruby Bridgeforth ("Bridgeforth"). *Id.* at ¶ 2. Plaintiff's husband, Michael Hawkins ("Hawkins"), was also employed by Defendant as the supervisor of maintenance operations at the Memphis Processing and Distribution Center. *Id.* at ¶ 3. Hawkins and Plaintiff did not have the same supervisors. *Id.* at ¶ 4. Defendant terminated Plaintiff for submitting an allegedly altered FMLA form. Pl.'s Statement of Undisputed Fact ¶ 4.

Concerning her prior EEO activity and for purposes of her Title VII claims, Plaintiff assisted Mr. Hawkins in filing two separate EEO complaints against the Postal Service on March 29, 2004, and August 9, 2004, under Agency Case Nos. 1H-381-012-04 and 1H-381-0051-04, respectively. Def.'s Statement of Undisputed Facts ¶ 5. In October and November 2004, Plaintiff and Mr. Hawkins contacted Robin Douglas, National EEOC Compliance, at Postal Service Headquarters to voice their belief that the Agency did not have an effective complaint process in place and that it did not provide protection for employees engaging in protected activity. *Id.* at ¶ 6. On December 3, 2004, Plaintiff sent an e-mail to Postal Service Vice President Anthony Vegliante, which mentioned the words fraud, retaliation, and denial of appeal rights. *Id.* at ¶ 7. On August 10, 2005, Mr. Hawkins filed his own civil action against Defendant in this Court. *Id.* at ¶ 9.

With respect to her protected FMLA activity, Plaintiff and her husband submitted an

FMLA certification form signed by their treating physician, Dr. J. Richard Dismukes, on

December 9, 2004.  Pl.'s Statement of Undisputed Fact ¶ 8.  Dr. Dismukes certified that

Plaintiff's husband suffered from a chronic condition which would qualify him for intermittent

FMLA leave over the next twelve (12) months.  *Id.* at ¶¶ 8-14.  Dr. Dismukes also certified that

Plaintiff would require leave to care for her husband's serious medical condition.  *Id.* at ¶ 8.  On

December 9, 2004, Dorothy Hamer ("Hamer"), an FMLA coordinator in Defendant's FMLA

office, sent notice to Plaintiff and her husband approving them for intermittent FMLA leave from

November 11, 2004, through June 8, 2005.  *Id.* at ¶ 15.[1]

On or about May 6 through May 9, 2005, Plaintiff was absent from work to care for her

husband.  *Id.* at ¶ 16.  On May 9, 2005, Plaintiff faxed a copy of her December 9, 2004 FMLA

form to Hamer to show that she was approved for FMLA leave until June 8, 2005.  *Id.* at ¶ 16.

Hamer date-stamped the form May 12, 2005, but denied Plaintiff's request.  *Id.*  On May 13,

2005, Plaintiff attended a meeting with her husband and his second-level supervisor where

Plaintiff complained about Defendant's FMLA office requesting an additional FMLA

certification from her husband.  Def.'s Statement of Undisputed Facts ¶ 8.  On May 24, 2005,

Hamer addressed a letter to Plaintiff notifying her that she needed to verify that her health care

provider had completed all necessary information pertaining to her care for her husband.  Pl.'s

Statement of Undisputed Fact ¶ 18.

Plaintiff also took FMLA leave for her own serious medical condition.  On June 6, 2005,

Plaintiff saw Dr. Dismukes.  Def.'s Statement of Undisputed Facts ¶ 10.  She took FMLA-

---

[1] An FMLA coordinator is responsible for reviewing and approving FMLA forms as well
as being familiar with the FMLA guidelines, rules, and regulations.  Pl.'s Statement of
Undisputed Fact ¶ 6.

protected leave on June 6 and 7, 2009.  *Id.* at  ¶ 11.  On June 10, 2005, Plaintiff submitted a Department of Labor Form WH-380, Certification of Health Care Provider, dated June 7, 2005, to Defendant's FMLA office.  *Id.* at ¶ 13.  This form sought FMLA coverage for Plaintiff's own medical condition that would result in "absence plus approximately 10-12 treatments over a 6 month period."  *Id.* at ¶ 14.  The FMLA office date-stamped Plaintiff's June 10, 2009 form to indicate that it was received, and the original form was placed in her FMLA file.  *Id.* at ¶ 15.  Plaintiff then took FMLA-protected sick leave from June 13 through 21, 2005.  *Id.* at ¶¶ 16, 18.  On June 30, 2005, Plaintiff saw another physician for follow-up examination.  *Id.* at ¶ 19.  On June 27, 2005, Plaintiff met with her supervisors, Jackson and Bridgeforth, to complain about her workload and about the fact that she had to work some nights.  *Id.* at ¶ 20.

On July 15, 2005, another WH-380 form was submitted to the FMLA Office on Plaintiff's behalf ("the July 15 form").  *Id.* at ¶ 22.  The July 15 form identified Plaintiff as "employee" and Plaintiff's husband as "patient" and requested leave on an "as-needed basis" for the "maximum 1 year period."  *Id.* at ¶ 23.  It appears to the Court that Plaintiff's request on the July 15 form was made for the purpose of taking leave to care for her husband and was separate from her June 10, 2005 request to take leave for her own medical needs.  Because the form was not submitted in conjunction with an absence, Plaintiff's July 15 form was placed in the inactive file by the FMLA office.  *Id.* at ¶ 24.  Nonetheless, the FMLA office noticed that there were similarities between this certification and the one that Plaintiff had submitted in June.  *Id.* at ¶ 25.  More specifically, page 3 of Plaintiff's July 15 form contained a signature by Dr. Dismukes which was identical to Dr. Dismukes' signature on Plaintiff's June 10, 2005 form.  *Id.* at ¶ 26.

Additionally, new information was added to page 3.  *Id.* at ¶ 27.  In response to paragraph

4

8a, which read "If leave is required to care for a family member of the employee with a serious

health condition, does the patient require assistance for basic medical or personal needs or safety,

or for transportation?," the word "yes" was typewritten.  Also under the section, which read,

> To be completed by the employee needing family leave to care for a family member:

> State the care you will provide and an estimate of the period during which care will be
> provided, including a schedule if leave is to be taken intermittently or if it will be
> necessary for you to work less than a full schedule:

the words "Basic medical/personal needs and/or transportation" were typewritten.  *Id*. at ¶ 27.[2]

Plaintiff disputes Defendant's statements concerning the July 15 form.  Plaintiff

contends that page 3, including Dr. Dismukes' signature and the added information, on the July

15 form should have included a page 3 signed by Dr. Dismukes and dated "5/6/2005," not

"6/07/2005."

The Office of Inspector General ("OIG") began investigating the matter of the identical

signatures on July 22, 2005, to determine whether either of the certifications had been altered.

*Id*. at ¶ 28.  In fact, OIG initially explored multiple areas of potential wrongdoing by Plaintiff.

*Id*. at ¶ 29.[3]  During this investigation, OIG used an administrative *subpoena duces tecum* to

obtain

information from Plaintiff's doctor.  *Id*. at ¶ 30.  According to Plaintiff, Investigator Fred

---

[2] Paragraph 8a reads, "If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?"

[3] Plaintiff has disputed Defendant's Statements at ¶¶ 28-29.  Plaintiff contends that the OIG investigation was not limited to the apparent similarity of her FMLA forms.  However, the Court fails to see the basis for Plaintiff's dispute, largely, because Defendant acknowledges in ¶ 29 that the scope of the investigation was broader than just the FMLA forms.

Johnson obtained information and some records from Ms. Hawkins' medical file without a subpoena.  The OIG investigation revealed that, as a practice, Dr. Dismukes retained a copy of every FMLA certification he signed for a patient in that individual's file at his medical office. Def.'s Statement of Facts ¶ 31.  Plaintiff argues that Dr. Dismukes testified during his deposition that sometimes documents were misplaced and that there were things that should be in Plaintiff's file but were not.  Dr. Dismukes' patient file for Plaintiff contained a copy of her June 10, 2005 form.  Def.'s Statement of Facts ¶ 32.[4]  According to Plaintiff, Dr. Dismukes' file also contained other forms including an FMLA form dated May 6, 2005, signed by Dr. Dismukes, and approving FMLA leave for Michael and Shirley Hawkins as the employees and Michael Hawkins as the patient.  However, the file did not contain a copy of Plaintiff's July 15 form. Def.'s Statement of Facts ¶ 34.  Plaintiff contends, however, that the May 6, 2005 form, which was in Dr. Dismukes' files, covered the same period covered by the July 15 form.

On August 9, 2005, Defendant placed Plaintiff in an emergency off-duty status with pay, pending the results of the investigation.  Def.'s Statement of Facts ¶ 35.  On October 25, 2005, OIG submitted to the Agency a Report of Investigation concerning Plaintiff.  *Id*. at ¶ 36.  The OIG report found that on August 9, 2005, the same date that Plaintiff was put on emergency off-duty status, Plaintiff called Dr. Dismukes' office, wanting to know whether anyone had requested her medical records.  *Id*. at ¶ 61.  Plaintiff instructed the receptionist to put notes on hers and her husband's charts saying, "Do not release medical records."  *Id*. at ¶ 62.  Plaintiff further told Dr. Dismukes' receptionist that there was something "funny" going on with "some dates" and to be sure to call her before any records were released.  *Id*. at ¶ 63.

---

[4] Plaintiff's removal was not based upon her June 10, 2005 form.  *Id*. at ¶ 33.

6

The OIG investigation also revealed that Plaintiff called the doctor's office a second time on August 9, 2005, this time speaking with the office manager. *Id*. at ¶ 64. Plaintiff advised the office manager that, "We got some dates wrong, and we need [Dr. Dismukes] to sign more papers." *Id*. at ¶ 65. Then, on October 10, 2005, Plaintiff accompanied her husband to his appointment with Dr. Dismukes and delivered the following documents: (1) the first two pages of Plaintiff's and Mr. Hawkins' separate July 15 forms; (2) two unsigned page 3's for those forms; and (3) the two page 3's which were actually attached to the two July 15 forms (as maintained by the FMLA office) with diagonal lines drawn through them. *Id*. at ¶ 66. The papers included a note that stated, "You signed these forms previously but Michael and I apparently signed the wrong dated (3rd) pages. Please sign these and place a correct copy in your files and we will pick up the originals this evening for our work." *Id*. at ¶ 67. Plaintiff did not advise the FMLA office at that time that they had the wrong page 3 with the July 15 form. *Id*. at ¶ 68. Prior to Plaintiff delivering these documents to Dr. Dismukes on October 10, 2005, her patient file did not contain the July 15 form, which she claimed Dr. Dismukes had previously certified. *Id*. at ¶ 69.

On November 7, 2005, an Investigative Interview was conducted to discuss the results of the investigation with Plaintiff and the charges against her, but Plaintiff refused to answer questions. *Id*. at ¶ 37. Plaintiff objects that this statement implies that she did not have the right to remain silent in the face of the accusations against her. On December 13, 2005, Jackson, Plaintiff's manager, issued a Notice of Proposed Removal to Plaintiff for submitting an altered

7

document to the FMLA office on July 15, 2005.  *Id*. at ¶ 38.[5]  The notice did not charge Plaintiff

with violating any specific Agency rule, regulation, or law.  *Id*. at ¶ 39.[6]

On February 2, 2006, the parties attempted to mediate an EEO complaint filed by

Plaintiff.  *Id*. at ¶ 42.  During mediation, Plaintiff produced for the first time a letter from Dr.

Dismukes in which Dr. Dismukes stated that Plaintiff's July 15 form was an authentic

certification and was "not altered by my patients."  *Id*. at ¶ 43.  Following mediation, the Agency

forwarded the new letter from Dr. Dismukes to OIG.  *Id*. at ¶ 44.[7]  OIG contacted Dr. Dismukes

about the letter.  *Id*. at ¶ 46.  In response to the letter, Dr. Dismukes provided a sworn statement

disavowing the letter.  *Id*.  Dr. Dismukes stated under oath to OIG agents that he only signed the

letter after Mr. Hawkins approached him unexpectedly in the parking lot near his office and

asked him to sign the letter.  *Id*. at ¶ 47.[8]  According to Dr. Dismukes, he was apprehensive about

Mr. Hawkins' demeanor, and he only signed the letter because he was intimidated and because

---

[5] Plaintiff disputes this statement on the basis that she alleges in this case that she was dismissed in retaliation for the exercise of her rights under Title VII and the FMLA.

[6] The notice did not specifically advise Plaintiff that she had a right to review all information relied upon in the issuance of the adverse action.  *Id*. at ¶ 40.  However, any procedural error that might have occurred was cured when the Agency subsequently provided her and her representative with access to, as well as digital copies of, the exhibits to the investigative report; moreover, any such error was not shown to have had any bearing on the outcome of Plaintiff's case.  *Id*. at ¶ 41.

[7] The letter produced by Plaintiff did not contain any admission of guilt or other information that Plaintiff could have considered at that time to be against her interest.  *Id*. at ¶ 45.

[8] In response to this Statement of Fact, Plaintiff argues that Dr. Dismukes reviewed the allegedly altered form during his deposition and testified that pursuant to his files on Plaintiff and Mr. Hawkins, everything in the July 15, 2005 form was true and accurate.  However, even if the alterations accurately reflected Dr. Dismukes' medical opinion, the Court fails to see how this statement disputes the fact that the July 15, 2005 certification form was altered.

he "felt sorry" for Mr. Hawkins.  *Id*. at ¶ 48.[9]  Dr. Dismukes also confirmed that his files did not

contain a copy the July 15 form.  *Id*. at ¶ 49.[10]

On March 17, 2006, Bridgeforth, Plaintiff's second-line supervisor, agreed that Plaintiff

should be removed for submitting an altered FMLA form.  *Id*. at ¶ 50.[11]  Plaintiff remained on

paid administrative leave until the date her removal became effective.  *Id*. at ¶ 51.  Furthermore,

neither Bridgeforth nor Jackson was aware of Plaintiff' prior EEO activity when her removal

was proposed or decided.  *Id*. at ¶ 52.[12]

Plaintiff appealed her removal to the Merit Systems Protection Board ("the MSPB" or

"the Board").  *Id*. at ¶ 70.  During her appeal, Plaintiff was deposed, and for the first time

---

[9] Plaintiff responds that the same affidavit also averred that Dr. Dismukes was concerned that Mr. Hawkins had a weapon during the encounter in the parking lot.  However, Dr. Dismukes expressly denied in his deposition testimony that he ever told OIG Investigator Johnson that he was concerned that Mr. Hawkins had a weapon.

[10] Plaintiff reiterates her contention that the May 6, 2005 form, which was in Dr. Dismukes' files, covers the same period covered by the July 15 form.  *See also* Resp. to Def.'s Statement of Undisputed Facts ¶ 34.

[11] In response, Plaintiff cites the testimony of an FMLA supervisor Brenda Mack where Mack stated that it would be inappropriate to discipline an employee for submitting an "inadequate" or deficient FMLA certification.  The Court finds that this testimony is not relevant because the stated reason for disciplining Plaintiff was not her submission of an "inadequate" FMLA certification but an altered FMLA certification.  The Mack testimony cited by Plaintiff does not address the appropriate discipline for submission of an altered or falsified FMLA certification.

[12] Plaintiff argues that Jackson and Bridgeforth were aware of her prior EEO activity because both were part of the investigative process, and information about Plaintiff's complaints to the Agency was stored on her computer which was seized during the investigation.  The Court finds no merit to this objection.  Unless Jackson or Bridgeforth were named in the EEO complaints, Plaintiff has offered no evidence that either manager had actual knowledge of her prior EEO activity.

attempted to explain the July 15 form.  *Id*. at ¶ 54.[13]  Plaintiff testified that the allegedly altered page 3, which was in her FMLA file and thereafter became the basis for her removal, was not the page 3 she actually submitted with her July 15 form.  *Id*. at ¶ 55.  Plaintiff claimed that the July 15 form was actually accompanied by another signature page, which must have been lost or mislaid by the FMLA office.  *Id*. at ¶ 56.  Plaintiff testified that the page 3 attached to her June 10 form was attached to the July 15 form without her knowledge.  Def.'s Mot. Summ. J., ex. 5, 14-15.  Plaintiff has no explanation for why page 3 of the July 15 form contained more information than page 3 of the June 10 form, and Plaintiff has "no idea" who would have typed in the additional information on the July 15 form.  *Id*. at ¶ 59.

Plaintiff went on to produce what she claimed was the actual page 3 that she had submitted with the July 15 form.  *Id*. at ¶ 57.  The page 3 Plaintiff produced was a copy of the page 3 from a WH-380 located in Dr. Dismukes' files and signed by him on May 6, 2005.  *Id*. The parties dispute whether the May 6 form was ever part of Plaintiff's FMLA file at the Agency.[14]  According to Defendant, the "actual" page 3 contained additional, handwritten information, which appeared in the section asking the employee to describe the care to be

---

[13] At no time did Plaintiff attempt to refute the Agency's factual allegations against her, either when the Agency attempted to conduct an investigative interview, when OIG contacted her, or even when she submitted statements in her own defense to Bridgeforth.  *Id*. at ¶ 53.  Plaintiff reiterates her objection that she had the right to remain silent in the face of the accusations against her.  *See also* Resp. to Def.'s Statement of Undisputed Facts ¶ 37.

[14] The Court notes that the form bearing the May 6, 2005 date does not have a stamp from the FMLA Office indicating that it was received.  Plaintiff has cited the deposition testimony of Dorothy Hamer, the individual in the FMLA Office maintaining Plaintiff's FMLA file. According to Plaintiff, Hamer testified that the actual page 3, dated May 6, 2005, was in Plaintiff's FMLA file.  Upon review of the precise portion of Hamer's deposition cited, however, the Court finds no support for that contention.

provided as part of the FMLA leave and read, "*transp., cooking, personal, dressing." *Id*. at ¶ 58. Plaintiff points out that these notes were written in the section to be completed by Plaintiff.

Plaintiff's appeal to the MSPB was tried in a consolidated hearing on November 1 and 2, 2006. *Id*. at ¶ 70. During the two-day MSPB hearing, the Administrative Judge found that the Plaintiff's demeanor ranged from "unbridled hubris" to "feigned naivete." *Id*. at ¶ 71. An Initial Decision containing detailed findings of fact and credibility determinations was issued on December 29, 2006. *Id*. at ¶ 72. AJ Clancy concluded that Plaintiff's explanations were so absurd that one would have to "suspend reality" to believe them. *Id*. at ¶ 73. AJ Clancy also concluded that Plaintiff's factual assertions were inherently improbable and contradicted by the other evidence of record. *Id*. at ¶ 74. The MSPB reasoned further that the alteration to Plaintiff's July 15 form was "hardly" a deficiency, which could have qualified for an opportunity to cure. *Id*. at ¶ 75. There was no nexus between any prior EEO activity by Plaintiff and her removal. *Id*. at ¶ 76. Plaintiff failed to show that she was treated differently in the imposition of discipline with respect to any similarly-situated individual, regardless of race. *Id*. at ¶ 77. Plaintiff's misconduct was serious and impacted the efficiency of the service, particularly given the fact that Plaintiff was a supervisor. *Id*. at ¶ 78. Based upon the deliberate nature of Plaintiff's misconduct and her failure to acknowledge any wrongdoing, the MSPB concluded that Plaintiff would not change her conduct in the future. *Id*. at ¶ 79. AJ Clancy concluded that Bridgeforth considered all appropriate factors in considering Plaintiff's termination; her decision to terminate was both reasonable and appropriate. *Id*. at ¶ 80. The MSPB, upon a Petition for Review by Plaintiff, reviewed AJ Clancy's decision and affirmed his Initial Decision. *Id*. at ¶ 81.

In the Motion before the Court, Defendant argues that he is entitled to summary judgment on all of Plaintiff's claims.  First, Defendant contends that Plaintiff failed to exhaust her administrative remedies as to her claims of sex and race discrimination and retaliation.  Second, Defendant argues that the MSPB's decision to affirm Plaintiff's removal is entitled to deference and should be affirmed.  Next, Plaintiff has failed to state a claim under the Privacy Act.  Defendant further argues that any claim against OIG Investigator Johnson should be dismissed.  Plaintiff cannot establish a prima facie case of either EEO or FMLA retaliation.  More specifically, Plaintiff cannot establish a causal connection between her EEO filing and the decision to place her on non-duty status or the ultimate decision to remove her.  With respect to her FMLA claims, Defendant argues that Plaintiff should not be permitted to assert an FMLA interference claim that was not alleged in her Amended Complaint and was raised for the first time in her Motion for Partial Summary Judgment (D.E. # 53) filed on August 14, 2009.  Plaintiff's FMLA retaliation claim should be dismissed because Plaintiff cannot show that she notified the Agency of her intent to take FMLA leave during the relevant time and because Defendant had a legitimate, non-retaliatory motive for removing Plaintiff.  Defendant argues that Plaintiff cannot prove pretext as to her FMLA retaliation claim because the doctrine of *res judicata* should apply in this case.  The MSPB has already found that the Agency acted properly and its decision to remove Plaintiff for altering the July 15 form had a basis in fact.  Therefore, the Court should grant Defendant summary judgment on all of Plaintiff's claims.

Plaintiff has responded in opposition to Defendant's Motion.  As an initial matter, Plaintiff has conceded her claims against Defendant pursuant to the Privacy Act, sex and race discrimination, and her appeal of the MSPB's decision to affirm her removal.  However, Plaintiff

12

continues to argue that summary judgment is not proper as to her FMLA claims and her Title VII retaliation claim.  Concerning her FMLA claims, Plaintiff argues that she has properly alleged claims for interference as well as retaliation.  Plaintiff argues that her Amended Complaint should be liberally construed to include claims of both types.  According to Plaintiff, she can establish a prima facie case of FMLA interference including the element that Defendant denied her FMLA benefits to which she was entitled.  Plaintiff contends that Defendant's requests for FMLA certification were more stringent than the FMLA regulations permit and constitute interference.  As for her claim of FMLA retaliation, Plaintiff can make out her prima facie case including the causal connection between protected FMLA leave and her removal.  Plaintiff points to the temporal proximity between her leave and termination as well as statements alleged in her Amended Complaint and attributed to Defendant.  Plaintiff further argues that genuine issues of fact about Defendant's stated reason for her termination exist and preclude summary judgment as to this claim.  Next, Plaintiff argues that while she has not alleged a cause of action against OIG Agent Johnson, Agent Johnson's conduct is relevant to her other claims against Defendant.  Finally, Plaintiff insists that she has stated a claim for retaliation under Title VII, largely for the same reasons that she can make out her claim for FMLA retaliation.  Therefore, Plaintiff asks the Court to deny Defendant's Motion.

Defendant has filed a reply brief to address arguments raised in Plaintiff's response.  Defendant restates its argument that Plaintiff has not properly stated a claim for FMLA interference.  Even if Plaintiff has stated her interference claim, Defendant argues that she cannot establish her prima facie case.  Defendant did not interfere in Plaintiff's right to take FMLA leave because Plaintiff did not take an absence in connection with her July 15 form.  Plaintiff

cannot base her claim on her husband's exercise of protected rights.  Nor can Plaintiff establish

her claim of FMLA retaliation due to her failure to adduce any evidence of a causal connection

between her FMLA leave and her termination.  Plaintiff cannot show temporal proximity and

may not rely on the unsupported statements alleged in her pleadings and attributed to

management.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law.[15]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

favorable to the nonmoving party.[16]  When the motion is supported by documentary proof such

as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

present some "specific facts showing that there is a genuine issue for trial."[17]  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."[18]  These facts

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

---

[15] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[16] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[17] *Celotex*, 477 U.S. at 324.

[18] *Matsushita*, 475 U.S. at 586.

verdict.[19]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[20]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[21]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[22]  Finally, the "judge may not make credibility determinations or weigh the evidence."[23]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[24]

## ANALYSIS

### I.    Plaintiff's Conceded Claims

Defendant has argued in the instant Motion that Plaintiff has failed to state several of her claims including her claims of sex and race discrimination, her judicial challenge to the MSPB's decision to affirm Plaintiff's removal, her Privacy Act claims, and any claims against OIG Agent Johnson.  In response, Plaintiff has stated that she has "no opposition to Defendant's arguments

---

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[20] *Id*. at 251-52 (1989).

[21] *Celotex*, 477 U.S. at 322.

[22] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[23] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[24] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

against said claims." Therefore, the Court holds that Defendant is entitled to summary judgment on these claims.

## II.      FMLA

This leaves only Plaintiff's claims pursuant to the FMLA and her Title VII retaliation claim. Generally, an employee who has taken leave pursuant to the FMLA is entitled to be "restored by the employer to the position of employment held by the employee when the leave commenced."[25] As such, the taking of leave "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced."[26] An employee returning from leave is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."[27] If an employee feels that her employer has unlawfully hindered her benefits as a result of taking FMLA leave, the Act recognizes two theories of civil liability: the interference theory under 29 U.S.C. § 2615(a)(1) and the retaliation theory under 29 U.S.C. § 2615(a)(2).[28]

### A.      *Interference*

The FMLA makes it unlawful for employers "to interfere with, restrain, or deny the

---

[25] 29 U.S.C. § 2614(a)(1)(A).

[26] *Id.*

[27] *Id.* § 2614(a)(2), (a)(3)(B).

[28] *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)).

exercise or the attempt to exercise any right provided under [the FMLA]."[29]  Under an interference theory, "any violation of the FMLA -or of the regulations implementing it- constitutes. . . unlawful interference."[30]  The Sixth Circuit has explained that the employer's intent is not relevant to the analysis of an FMLA interference claim.[31]  Nevertheless, the FMLA is not a strict-liability statute.[32]  Put another way, "the mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation."[33]  An employee alleging an interference claim against her employer must establish that the employer's violation caused her harm.[34]

To establish a claim for interference, the Plaintiff must demonstrate by a preponderance of the evidence that (1) she was an "eligible employee" as defined by 29 U.S.C. § 2611(2); (2) the defendant is an "employer" as defined by 29 U.S.C. § 2611(4); (3) the employee was entitled to FMLA leave pursuant to 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of her intention to take leave as defined by 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which she was entitled, or has "somehow used the leave against

---

[29] 29. U.S.C. § 2615(a)(1).

[30] 29 C.F.R. § 825.220(b); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004).

[31] *Edgar*, 443 F.3d at 507 (quoting *Arban v. West Pub. Corp.*, 345 F.3d 390 (6th Cir. 2003) ("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.").

[32] *Edgar*, 443 F.3d at 507-08.

[33] *Allen v. Butler County Com'rs*, 331 Fed. Appx. 389, 394 (6th Cir. 2009).

[34] *Edgar*, 443 F.3d at 507-08 (citing *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002)).

[the employee] in an unlawful manner, as provided in either the statute or regulations."[35]  "[A]n employer may [not] use an employee's taking of FMLA leave as a negative factor in [an] employment action. . . ."[36]  As the Sixth Circuit has explained, "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled."[37]

As an initial matter, Defendant argues that Plaintiff has failed to sufficiently allege in her Amended Complaint that Defendant interfered with Plaintiff's FMLA rights.  Defendant argues that Plaintiff has alleged her interference claim for the first time in her Motion for Partial Summary Judgment (D.E. # 53), which was filed a little less than three years after Plaintiff filed her initial Complaint.  Although the Court is not convinced that Plaintiff has sufficiently alleged her FMLA interference claim in her Amended Complaint, the Court holds that even if the claim was stated, Plaintiff has failed to carry her burden to survive summary judgment.[38]

---

[35] *Wysong*, 503 F.3d at 447.

[36] 29 C.F.R. § 825.220(c); *see, e.g., Brenneman*, 366 F.3d at 422.

[37] *Wysong*, 503 F.3d at 447.

[38] The Court would simply point out that Plaintiff's Amended Complaint specifically states "Plaintiff brings this action under the laws Title VII of the Civil Rights Act 1964 & 1991 and 42 U .S.C. § 2000e.  The Court's supplemental jurisdiction is invoked pursuant to 5 U.S.C. § 7703(b)(2)."  While it is true that a complaint need not contain labels or formulaic allegations, the Amended Complaint did not invoke the interference provision of the FMLA.  Indeed the Amended Complaint fails to mention 29 U.S.C. § 2615 at all.  Of the Amended Complaint's fifty-eight (58) paragraphs, Plaintiff cites two (2) to support her allegation of FMLA interference.  Additionally, it is not clear to the Court that the Amended Complaint contains "direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 889, 902 (6th Cir. 2003).  In light of the Sixth Circuit's discussion in *Wysong*, however, the Court declines to hold that the Amended Complaint in this case has failed to state an FMLA interference claim.

18

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that the first four elements of her prima facie case of FMLA interference are satisfied.  However, Plaintiff has failed to adduce evidence from which a reasonable juror could conclude that Defendant denied her FMLA benefits to which she was entitled, or that Defendant "somehow used the leave against [her] in an unlawful manner, as provided in either the statute or regulations."  According to her Motion for Partial Summary Judgment, Plaintiff's FMLA interference claim is based on two separate incidents.  First, Plaintiff argues that Defendant interfered with her FMLA rights by requesting a recertification in May 2005 concerning Plaintiff's need for leave to care for her husband.  Plaintiff argues that her physician had certified her for FMLA leave to care for her husband on December 9, 2004, and indicated that the need for leave would last for twelve (12) months.  The certification form stated that the leave period had actually begun on November 8, 2004.  According to the record, Plaintiff was absent from work from May 6 through May 9, 2005, to care for her husband.  When Defendant sought an FMLA certification for those absences, Plaintiff faxed a copy of the December 2004 certification to the FMLA office.  Defendant responded by requesting a recertification from Plaintiff's physician.

While it is true that Defendant asked Plaintiff for recertification in May 2005, that is, more than six (6) months after her doctor's certification, the regulations implementing the FMLA permit an employer to request recertification every six months.

> In all cases, an employer may request a recertification of a medical condition every six months in connection with an absence by the employee.  Accordingly, even if the medical certification indicates that the employee will need intermittent or reduced schedule leave for a period in excess of six months (e.g., for a lifetime condition), the employer would be permitted to request recertification every six months in connection

with an absence.[39]

Based on a plain reading of the regulation, the Court finds that Defendant was permitted to seek recertification every six months in connection with an absence.  As a result, Defendant did not violate the FMLA or its regulations by seeking recertification in May 2005, following Plaintiff's absences to care for her husband.  Therefore, Defendant did not interfere with Plaintiff's FMLA rights by requesting recertification in May 2005.

The second instance of alleged interference occurred when Defendant's FMLA office turned over Plaintiff's July 15 form to management for investigation instead of giving Plaintiff the opportunity to cure or explain the form.  The Sixth Circuit has "recognized that an employer who finds an employee's certification to be 'incomplete' has a duty to inform the employee of the deficiency and provide the employee a 'reasonable opportunity' to cure it."[40]  However, the opportunity for cure is mandated only where "the employer finds a certification incomplete or insufficient."[41]  The Department of Labor regulations define an "incomplete" certification as a certification where "one or more of the applicable entries have not been completed."[42]  An "insufficient" certification is a certification where "the information provided is vague, ambiguous, or non-responsive."[43]  When an employee submits an "incomplete" or "insufficient"

---

[39] 29 C.F.R. § 825.308.

[40] *Novak v. MetroHealth Medical Center*, 503 F.3d 572, 579 (6th Cir. 2007) (citing 29 C.F.R. § 825.305(d)).

[41] 29 C.F.R. § 825.305(d).

[42] *Id*.

[43] *Id*.

certification, "the employer must provide the employee with seven calendar days. . . to cure any such deficiency."[44]  Based on the record before the Court, the Court finds that Plaintiff's July 15 form was sufficient and complete as those terms are defined under the regulations.  Neither party has argued that Plaintiff's July 15 form lacked "one or more of the applicable entries" or that the form was "vague, ambiguous, or non-responsive."  Because the July 15 form was not incomplete or insufficient, the regulations did not require that Defendant give Plaintiff an opportunity to cure.

At the same time, the regulations are clear that if a certification is complete and sufficient, an employer is not required to contact the employee or the employee's health care provider to verify the authenticity of the certification.[45]  The employer's health care provider "*may* contact the employee's health care provider, with the employee's permission, for purposes of clarification and *authenticity* of the medical certification."[46]  The Sixth Circuit has construed other provisions of the FMLA using "may" language as "merely permissive" and  not "impos[ing] an affirmative duty on an employer."[47]  The regulation defines "authentication" as "providing the health care provider with a copy of the certification and requesting verification that the information contained on the certification form was completed and/or authorized by the health care provider who signed the document."[48]

------

[44] *Id.*

[45] 29 C.F.R. § 825.307(a).

[46] *Id.* (emphasis added).

[47] *Novak*, 503 F.3d at 579 (construing 29 U.S.C. § 2613(c)(1)).

[48] *Id.*

Construing the plain meaning of the regulation, the Court finds that not only did Defendant not have an affirmative duty to offer Plaintiff an opportunity to cure her July 15 form, but Defendant also did not have an affirmative duty to contact her physician to authenticate the form.  Indeed, the Sixth Circuit has held that while "the medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider," the employer may overcome this presumption by showing that "the certification is invalid or inauthentic."[49]  The regulations do not require that the employer give the employee an opportunity to explain an FMLA certification which the employer suspects is not authentic or that the employer contact the provider.  Indeed, contact between the employer and the employee's health care provider is disfavored under the regulations and strictly limited.[50]

Moreover, it cannot be said that Plaintiff was not given multiple opportunities to explain her recertification form.  The record indicates that Plaintiff participated in an investigative interview but chose not to respond to the allegation that her July 15 form was altered.  When Plaintiff did attempt to explain the July 15 form, she offered contradictory accounts of why the

---

[49] *Id*. at 578.

[50] 29 C.F.R. § 825.307(a). The Court finds that this regulation clearly disfavors communication between the employer or its agents and the employee's health care provider.  For example, the regulation provides that the employer generally has no right to contact the employee's doctor.  Contact is limited to specific situations such as the need for clarification and authentication and only with the employee's permission.  Even then contact is permissive; the employer is not required to contact the doctor.  Additionally, the regulation forbids the employer or its agents from asking for any additional information and cites HIPAA privacy rules.  Taken together, the Court construes the regulation to be a strict limit on the employer's ability to contact the health care provider, not a directive to contact doctors whenever a certification's authenticity is questioned.  *But see Harcourt v. Cincinnati Bell Tel.Co.*, 383 F. Supp. 2d 944, 955-56 (S.D. Ohio 2005).

July 15 form appeared to be altered.  During mediation in February 2006, Plaintiff produced a

letter from her doctor claiming that the July 15 form was accurate.  However, during a

subsequent deposition, Plaintiff stated that the July 15 form simply had the wrong page 3

attached to it and implied that someone working in the FMLA office had switched the pages.

Thus, Plaintiff was provided multiple opportunities to address the authenticity of the July 15

form yet gave inconsistent explanations about the suspected alterations.[51]  The Court holds that

Defendant did not interfere with Plaintiff's FMLA rights by failing to the comply with the

FMLA or its regulations when it conducted the investigation about the July 15 form.

Finally, Plaintiff has failed to proffer any other evidence that she was denied any leave to

which she was entitled at any time.[52]  The record indicates that Plaintiff sought and was granted

FMLA leave on several occasions during the relevant period.  In no instance did Defendant ever

deny Plaintiff FMLA leave to which she was entitled.  Likewise, Plaintiff has failed to carry her

burden to show that her FMLA leave was somehow used against her in an unlawful manner.  It is

undisputed that Plaintiff was not terminated for taking leave, FMLA or otherwise, to which she

was entitled.  Rather Defendant terminated Plaintiff for allegedly falsifying an FMLA

recertification form.  "[I]nterference with an employee's FMLA rights does not constitute a

violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for

engaging in the challenged conduct."[53]  The Sixth Circuit has held that an employee may be

---

[51] *Accord Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894, 901 (S.D. Ohio1999).

[52] *See also Lawson-Brewster v. River Valley School Dist.*, 2008 WL 1820908, *12 (W.D. Mich. 2008) ("Plaintiff has neither alleged nor shown that she was denied benefits to which she was entitled when she took leave in March and April 2004.").

[53] *Id.* at 507.  *See also Allen*, 331 Fed. Appx. at 394; *Grace v. USCAR,* 521 F.3d 655, 670 (6th Cir. 2008).

terminated if "the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."[54]

The Court finds that Defendant had a legitimate reason for terminating Plaintiff, namely, its conclusion that Plaintiff had improperly submitted an altered FMLA recertification form.  The July 15 form submitted for the medical needs of Plaintiff's husband was identical to the June 10 form submitted for leave for Plaintiff's own medical needs.  The July 15 form, however, contained additional information, which was not in the June 10 form and was entered with a different typeface than the other information entered on the form.  These factors led Defendant to investigate the authenticity of the July 15 form.  During the investigation, Defendant concluded that Plaintiff had called Dr. Dismukes' office on the same day that she was placed on leave in August 2005 and commented to his staff that some of the dates on her FMLA paperwork were incorrect.  At her next appointment with the doctor, Plaintiff produced new pages for his signature, again stating that the July 15 form mistakenly bore the wrong date on page 3. Defendant also found that in January 2006, Plaintiff's husband approached Dr. Dismukes in the parking lot of his office and asked Dr. Dismukes to sign a letter stating that the July 15 form was accurate and had not been altered.  Dr. Dismukes later averred in an affidavit that he signed the letter at Mr. Hawkins' request because he felt sorry for Mr. Hawkins and uncomfortable about the manner in which Mr. Hawkins approached him.  Based on this evidence, Defendant concluded that the July 15 form was altered and terminated Plaintiff for falsifying her FMLA recertification.  Furthermore, in an administrative appeal of her termination, Plaintiff claimed not

---

[54] *Edgar*, 443 F.3d at 508 (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 961 (10th Cir. 2002)).

that the July 15 form simply had the wrong date.  Instead Plaintiff asserted for the first time that

the July 15 form she submitted to Defendant was not the same July 15 form in Defendant's

FMLA file.  Plaintiff claimed that the page 3 containing Dr. Dismukes' signature and the

additional information was not the same page 3 she originally submitted with her recertification

in July 2005.  Plaintiff suggested that someone in the FMLA office had switched the original

page for the altered page.  The Court finds that Defendant's decision to terminate was supported

by the contents of the July 15 form, Plaintiff's conduct after being placed on administrative

leave, and her changing story about the July 15 form.  Defendant had a legitimate reason for

terminating Plaintiff based on all of the information obtained during the investigation and on

Plaintiff's conduct.

Having held that Plaintiff has failed to adduce evidence in support of her FMLA

interference claim, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, and

Defendant's Motion for Summary Judgment is **GRANTED** as to this claim.

### B.       Retaliation

An employer may not "discharge or in any other manner discriminate against an

individual for opposing any practice made unlawful by [the FMLA]."[55]  An FMLA

retaliation claim is different than an interference claim, because under a retaliation theory, the

intent of the employer matters.[56]  "The employer's motive is relevant because retaliation claims

impose liability on employers that act against employees specifically because those employees

---

[55] 29 U.S.C. § 2615; 29 C.F.R. § 825.220.

[56] *Edgar*, 443 F.3d at 508.

invoked their FMLA rights."[57]  Retaliation claims may be proved with either direct or indirect evidence.[58]  "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[59]

Where the plaintiff relies on indirect evidence, the Court will analyze the claim under the three-step *McDonnell Douglas* burden-shifting framework.[60]  First, the employee must make a prima facie case of unlawful retaliation.[61]  To establish a prima facie case of retaliation, the employee must demonstrate that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity.[62]  Once the plaintiff has established a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its action.[63]  If the employer has articulated a legitimate reason for its action, the plaintiff must then demonstrate that "the proffered reason was not the true reason

---

[57] *Id.*

[58] *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

[59] *Id.*; *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

[60] *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008); *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) ("An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in *McDonnell Douglas*.").

[61] *Bell v. Prefix, Inc.*, 321 Fed. Appx. 423, 426 (6th Cir. 2009).

[62] *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000).

[63] *Bell*, 321 Fed. Appx. at 426; *Morris*, 201 F.3d at 792-93.

for the employment decision."[64]

Viewing the evidence in the light most favorable to Plaintiff, the Court holds that Plaintiff can make out her prima facie case of FMLA retaliation: that she engaged in protected FMLA leave; that she suffered an adverse employment action; and that there was a causal connection by virtue of the temporal proximity.  It is undisputed that Plaintiff had engaged in protected leave and that Defendant terminated Plaintiff.  As for the causal connection, Plaintiff must "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity.[65] "Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."[66]  Under general principles of anti-discrimination law, temporal proximity between a plaintiff's protected activity and an adverse employment action is not enough.[67]  A plaintiff must also present other circumstantial evidence to prove the causal connection.[68]  Nevertheless, the Sixth Circuit has held that "in certain distinct cases" temporal proximity alone can be sufficient as indirect evidence to establish the causal connection element of a prima facie case.[69]

---

[64] *Bell*, 321 Fed. Appx. at 426; *Morris*, 201 F.3d at 792-93.

[65] *E.g. Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *DiCarlo*, 358 F.3d at 420 (where "proximity between the protected activity and the adverse employment action is acutely near in time"); *Skrjanc v. Great Lakes Power Service Co.*,

In this case, Plaintiff argues that she can prove the causal connection by means of temporal proximity and additional circumstantial evidence.  With respect to the other circumstantial evidence, Plaintiff cites her Amended Complaint for "seemingly celebratory comments by her superiors in September 2005 to the effect that under the circumstances, there was a '99.1% chance [Plaintiff] won't be back … [I]ts a done deal … [T]hey won't be back… .'" However, the Court notes that Plaintiff may not rely on the allegations of her pleadings at the summary judgment stage.  Instead, Plaintiff must come forward with proof for these statements, for example, in a deposition or affidavit testimony, which Plaintiff has failed to do.  Thus, the Court may not consider the alleged statements of Plaintiff's supervisors without some evidentiary support.  As a result, Plaintiff is left to argue that temporal proximity alone establishes the causal connection.

The Court finds that there was such temporal proximity between Plaintiff's protected activity and her adverse action that Plaintiff can establish a causal connection.  Plaintiff took leave for her own medical needs on June 6 and 7, 2005, and then again from June 13 through June 20, 2005.  While it is true that Plaintiff was not actually terminated until March 2006, some nine months after her protected leave, Defendant began investigating Plaintiff on July 22, 2005, and placed Plaintiff on paid administrative leave on August 9, 2005.  Both actions constitute "adverse employment actions" in that they might dissuade a reasonable worker from engaging in protected activity.[70]  The Court finds that there was a span of less than one month between the

272 F.3d 309, 314 (6th Cir. 2001).

[70] *Michael v. Caterpillar Financial Services Corp.*,496 F.3d 584, 596 (6th Cir. 2007) (Title VII retaliation) (citing *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006).  *See also Malloy v. Potter*, 266 Fed. Appx. 424, 427 (6th Cir. 2008) (in postal

end of Plaintiff's FMLA leave in June 2005 and Defendant's initiation of an investigation into Plaintiff's recertification form in July 2005.  Such temporal proximity constitutes indirect evidence of a causal connection.  Therefore, Plaintiff can make out this final prong of her prima facie case.

Nevertheless, the Court holds that Defendant has proffered a legitimate, nondiscriminatory reason for its actions, and Plaintiff has failed to demonstrate that Defendant's reason was pretextual.  For the same reasons already discussed *supra*, the Court finds that Defendant dismissed Plaintiff for submitting an altered FMLA recertification form in July 2005. Defendant conducted a thorough investigation of the circumstances surrounding the July 15 form including Plaintiff's conduct and her husband's conduct after the investigation commenced. Plaintiff's explanation for the apparent alterations was inconsistent and varied through the course of the investigation.  Thus, Defendant had a well-supported basis for its conclusion that Plaintiff had submitted an altered form and for its decision to terminate her.

As for the initial decision to investigate the form, Plaintiff argues that Dorothy Hamer, the FMLA coordinator who first noticed the apparent alteration on the July 15 form, was motivated to retaliate against Plaintiff because Plaintiff had complained about Hamer.  More specifically, Plaintiff telephoned Brenda Clayton-Mack ("Mack"), Hamer's supervisor, to complain that Hamer had filed the July 15 form as "inactive" because it was not submitted in connection with an absence.[71]  However, the record shows that Hamer could not have retaliated

_____

employee's FMLA retaliation claim, adverse actions included Letters of Warning and Last Chance Agreement as well as termination).

[71] Mack Depo., Feb. 26, 2009, 73:4-74:15.  In the same telephone conversation, Plaintiff complained about Hamer requesting the recertification in May 2005.

29

against Plaintiff because the investigation was initiated before Plaintiff made the complaint against Hamer.  The OIG investigation into Plaintiff's conduct began on July 22, 2005.  Hamer notified Plaintiff that the July 15 form was being filed as inactive in a letter dated July 26, 2005. Clearly Hamer could not have retaliated against Plaintiff by handing the July 15 form over for investigation before Plaintiff actually made her complaint against Hamer.  Having already concluded that as a matter of law Defendant did not have a duty to permit Plaintiff to cure or authenticate the July 15 form, the Court holds that Hamer's decision to hand the form over for more investigation was not retaliatory.

After Defendant has proffered a legitimate reason for its adverse actions, Plaintiff now bears the burden to prove that Defendant's legitimate reason for terminating her is pretext for discrimination.[72]  Plaintiff may show that (1) Defendant's stated reasons had no basis in fact, (2) the stated reasons were not the actual reasons, or (3) the stated reasons were insufficient to explain Defendant's actions.[73]  The Court holds that Plaintiff has failed to make any of these showings.

First, Defendant's stated reasons for Plaintiff's termination had a basis in fact.  Defendant acted on the results of a lengthy investigation into Plaintiff's July 15 form and after giving Plaintiff an opportunity to explain the factors that made the form suspicious.  During the investigation, Plaintiff made several attempts to involve her physician, first by having Dr. Dismukes sign a new page 3 with a different date than the one on the original July 15 form, which Plaintiff then submitted to the FMLA office.  The record also indicates that Plaintiff

---

[72] *Anderson*, 957 S.W.2d at 559.

[73] *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).

refused to participate in an investigatory interview, which would have allowed her to present her side of the story.  Instead Plaintiff waited until a mediation to introduce a letter from Dr. Dismukes averring that Plaintiff and her husband had not altered the July 15 form.  However, the investigation revealed that this letter was obtained by Plaintiff's husband when he approached Dr. Dismukes in a parking lot and requested his signature on a letter Dr. Dismukes had not written.  The Court finds then that Defendant had a basis in fact to conclude that Plaintiff had submitted an altered form.[74]

Furthermore, Plaintiff has failed to adduce any evidence for the second and third showings to demonstrate that Defendant's stated reasons were pretextual.  Plaintiff has failed to offer any proof that the stated reasons were not the actual reasons.  Indeed the only evidence of a causal connection Plaintiff has proffered is the temporal proximity of her FMLA leave and the beginning of the investigation.  While temporal proximity permits Plaintiff to make out a prima facie case of FMLA retaliation, temporal proximity alone is insufficient to establish pretext at this stage of the analysis.[75]  Plaintiff has failed to offer any other circumstantial evidence to show that Defendant's conclusion that she submitted an altered FMLA form was not the actual reason for her termination.  Likewise, Plaintiff has not shown that Defendant's stated reasons were insufficient to explain her termination.  Plaintiff cites her long years of service in Defendant's

---

[74] What is more, after her termination and during her administrative appeal, Plaintiff began to allege that the July 15 form in Defendant's file was not the same form she had submitted.  Plaintiff contended that someone else had altered the form after she submitted it.  Although this new account was introduced after Defendant had decided to terminate her, Plaintiff's changing story further supports Defendant's honest belief that the July 15 form was altered.

[75] *Skrjanc*, 272 F.3d at 317.

employ as well as the alleged statements of her supervisors.  As previously noted, Plaintiff has

offered no evidentiary support for those statements, and so the Court cannot consider them here.

As for her lengthy tenure, Defendant has argued that it took the action it did in light of Plaintiff's

failure to explain the form and her refusal to admit any wrongdoing in the face of evidence that

the form was altered.  Taking together the seriousness of the conduct and Plaintiff's position as a

supervisor, Defendant concluded that termination was an appropriate action.  Plaintiff has

offered no proof to demonstrate that Defendant's decision was disproportionate.

Having held that Defendant has provided a legitimate reason for Plaintiff's termination

and that Plaintiff cannot demonstrate pretext, the Court grants Defendant summary judgment as

to Plaintiff's FMLA retaliation claim.

III.    **Title VII Retaliation**

Finally, the Court concludes that Defendant is entitled to summary judgment as to

Plaintiff's Title VII retaliation claim.  In order to make out a *prima facie* case of retaliation,

Plaintiff must demonstrate (1) that she engaged in protected conduct; (2) that Defendant had

knowledge of her protected activity; (3) that Defendant took an adverse employment action

against her; and (4) that there was a causal connection between the protected activity and the

adverse employment action.[76]  The parties disagree over whether there was a causal connection

between the protected activity and her termination.

As an initial matter, the Court notes that its temporal proximity analysis as to this claim

of retaliation differs from its analysis of Plaintiff's FMLA claim of retaliation due to the different

---

[76] *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d
345 (2006).

set of facts presented with each claim.  With respect to her Title VII claim, Plaintiff's protected EEO activity occurred when she assisted her husband in filing separate EEO complaints in March 29, 2004, and August 9, 2004.  Later in October and November 2004, Plaintiff and her husband contacted Defendant's National EEOC Compliance office to complain about Defendant's EEO process.  Also on December 3, 2004, Plaintiff sent an e-mail to the Postal Service Vice President complaining of fraud, retaliation, and a denial of appeal rights.  For the sake of this analysis, the Court will assume without deciding that any of these activities were protected under Title VII.  Plaintiff suffered her initial adverse action in July 2005 when Defendant initiated an investigation into her conduct which included her FMLA recertification form.  The Court finds then that there was a span of almost eight (8) months between Plaintiff's latest protected EEO activity, the e-mail to the Postal Service Vice-President in December 2004, and the earliest adverse action, the investigation in July 2005.

The Sixth Circuit has rarely found a temporal span of more than six (6) months sufficient evidence of a causal connection.[77]  More importantly, temporal proximity without additional circumstantial evidence of discriminatory intent is not enough to establish a causal connection. Here Plaintiff relies again on allegations about statements from management which were part of her Amended Complaint.  These allegations have no support in the record before the Court. Without more than temporal proximity of eight months, the Court holds that Plaintiff has failed to establish a prima facie case of Title VII discrimination.

Even if Plaintiff could make out a prima facie case, Plaintiff's Title VII retaliation claim would still fail for the same reasons that her FMLA retaliation claim would fail.  Defendant had

---

[77] *DiCarlo*, 358 F.3d at 420.

a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff, her submission of an altered FMLA form.  Plaintiff has failed to offer any evidence that Defendant's reason was a pretext for discrimination.  Therefore, Defendant's Motion is **GRANTED** as to this claim as well.

### CONCLUSION

Defendant is entitled to summary judgment on Plaintiff's claims for FMLA interference and retaliation and her Title VII retaliation claim.  Plaintiff has conceded all of her other claims. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 10th, 2009.